## MARSHALL v. CHITTENDEN et al.

M. executed a deed of land to five persons and their successors, as trustees, to be appointed, regulated, and governed, in the manner stipulated in the deed, in trust for a Congregational Church, to be subsequently organed in the town of Keokuk, under certain regulations and contingences; some time after M. died, and his heirs conveyed the same land to S. T. M.; held that as the object of the trust was not in esse, and as the regulations and contingences had not been observed, the deed first made could not be sustained; held also, that the deed from the heirs divested all contingent interest under the first deed, and vested the title in S. T. M.

In Equity.   *Appeal from Lee District Court.*

*Opinion by* Greene, J.   Bill to revoke and cancel a conveyance of forty acres, executed by John McKean in 1846, to defendants, A. B. Chittenden and four other persons, in trust for an orthodox congregational church at Keokuk. Subsequent to the death of McKean, his heirs and widow conveyed the same land to Marshall, who files this bill to quiet his title. The defendant demurred to the bill in the court below. The demurrer was sustained and the bill dismissed.

Complainants appeal, and raise two questions for the decision of this court.

1. Was the deed from McKean to defendants a valid conveyance of any interest in the land? 2. Did not the subsequent conveyance to complainants, divest such interest, even if any passed to defendents, and vests the absolute title in complainants?

The deed to defendants, from one McKean, provides that their successors shall be chosen in the manner stipulated by the deed, and the conveyance is declared to be in trust, "for the use, benefit and support of an orthodox congregational church, at the town of Keokuk, to be called and named 'The Congregational Church of Keokuk,'"

Marshall *v.* Chittenden.

The trustees are enjoined by the deed, to appropriate the forty acres of land and all proceeds arising from the sale or rents thereof, " to the use, benefits and support of the first congregational church which shall be organized at said town under the title aforesaid. "

The deed stipulates that the trust shall be applied to no other purpose. It provides that any three of the trustees, or all the survivors, may fill any vacancy in their number; and in case a trustee resign, he is authorized to propose his successor.

The deed provides for a board of council to try charges against any one of the trustees, and to expel him for any moral delinquency. The trustees named in the deed accepted the trust, and agreed to perform the duties, December 25, 1846.

1. The first point presented for adjudication is, Does the deed create a valid contingent remainder?

It is obvious that the trustees were not vested with a freehold estate. The grantor intended to convey a legal title to them upon certain contingencies. This title was contingent upon their willingness to serve, their good behavior, their residence in Keokuk, and upon the facts that the " orthodox " congregational church should be organized.

Those contingences which affect the trustees, it may not be necessary to consider, because there is nothing in the record which disturbs the presumption of their willingness to act under the deed as trustees; the deed vested in them a *contingent naked legal title.* But the use under our statute could only take effect upon the contingency that the *cestui que use* should be organized or incorporated into existence. There was no such church at the time the deed was executed, and consequently the trust could be applied to no such use as that, stipulated in the grant. The use could not pass, because there was no party in whom it could be vested. It consequently remained with the

grantor and his heirs. It seems obvious that no estate was created by virtue of the deed, but a kind of remainder was, *in futuro* to pass upon the remote, possible contin-contingency, that the trustees should continue a valid existence, and the *cestui que use* should be created, be properly christened and located, and be embued with an orthodox spirit. But two of the trustees have deceased without legal succession, and consequently the board has no valid existence, nor has the church been organized, nor have the other contingences, stipulated, been performed.

· This cannot be regarded, even as a valid remainder, for it does not appear to be supported by any vested estate of freehold. 4 Mod. 316; 2 Bl. Com. 168; 4 Kent, 234, 248. An estate resting upon a remote future contingency is void. 4 Kent, 283. Fern on Rem. 452; Coke Lit. 49. A remainder may rest upon a common or near possibility, as death, or even death without issue, but not upon a remote possibility as to a corporction not then in *esse.* 4 Kent, 406. The organization of a church corporation is not an event which the law anticipates. It is *potentia remota,* and cannot be legally preserved even under laws where an established church is recognized.

It is conceded that there has been no such church organized at Keokuk, either before or since the death of the grantor; that consequently his use and title were in no way divested at the period of his death. It therefore follows that the use and title passed to his heirs, and that they had the right to convey a valid title to Marshall. Had the contingency happened; had the church been organized under the restrictions of the deed, and taken to itself the use and possession of the land, during the life time of Mc-Kean; much weight should then be given to the arguments of counsel for appellees. The contingency having happened, and the estate having passed to a party in being before his death, it might with propriety be assumed, under the doctrine of charitable uses that the conveyance

Marshall *v.* Chittenden.

was not absolutely void, as against the grantor. In such a case, although the deed would, in itself, be legally void, as having had no grantor, and void as creating an estate *in futuro*, still the doctrine of cypress might be applied for the purpose of carrying out the intention of the grantor, under circumstances which gave notice to the heirs, or subsequent purchasers, that such intention was manifest, not only before, but after the contingency happened. But, in the case at bar, the contingency did not happen, there was no subsequent circumstances showing a continued intention on the part of the grantor, that his heirs should be divested of their rights upon any contingency subsequent to his death. Upon the death of McKean, there was in existence no adverse claimant to the land in question; the use and title, therefore passed to his heirs. They should not be divested of that title upon the mere naked, invalid, granteeless deed, under which the trustees claim rights. That contingent interest was so remote and uncertain, so destitute of any object upon which it could rest, that it should hardly be regarded as even a cloud of doubt upon the title of the heirs; and their subsequent conveyance to Marshall swept away any shadow of a contingent interest hovering about the impracticable deed made by McKean. We say the deed is impracticable, because it is not possible to carry out its stipulations. The grantor appears to have regarded the persons, to whom he undertook to convey the legal title, as a corporation; attempting to impart to them and their successors perpetual duration; establishing rules for their government, creating a court for the trial and expulsion of members, and giving them the power to appoint their successors.

The deed seems to contemplate the trustees as invested, in all respects, with corporate powers. It is obvious that he could not clothe them with such corporate powers, and equally obvious that the trustees could not carry out the intention of the grantor, without being legally incorporated

ted. Without such corporate powers, the legal title in them would descend to their heirs, and not to their successors, and thus one of the leading objects of the grantor would be subverted. It is true, courts should favor any demise or bequest made to charitable objects, but this should only be done consistently with the intentions of the donor. Here there was no demise or bequest, nothing more than a voluntary, vague, infeasible deed, without consideration or possession, and under which no rights had been acquired. Had it been the intention of McKean to divest his heirs upon a subsequent contingency, by a deed so irregular and invalid, he should have confirmed this intention by his will, as the doctrine of cypress is more applicable to demises than to conveyances.

1. We conclude, then, from the record before us, that the conveyance cannot be sustained even as a charitable use, because the intention of the grantor cannot be carried out consistently with the deed itself, nor with established principles of common law, as the object of the charity is not *in esse;* nor can it be good as a contingent use, or a contingent remainder, for the reasons already adduced.

2. We also conclude, that the conveyance from the heirs to complainant, divested all shadow of contingent interest, and vested the absolute title in complainant.

It therefore follows, that the demurrer to the bill should have been overruled, and a decree entered for complainant.

Decree reversed.

*J. C. Hull* and *L. R. Reeves*, for appellants.

*R. P. Lowe*, for appellees.